SAIKO OKI
P.O. Box 37
Point Reyes Station, CA 94956
Telephone: (415) 328-9684
Plaintiff, Pro Se

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAIKO OKI, <br><br> Plaintiff, <br><br> v. <br><br> TRANSUNION LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC;  WELLS FARGO BANK, NATIONAL ASSOCIATION; REDWOOD CREDIT UNION; MAXIMUS EDUCATION, LLC dba AIDVANTAGE; HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI (MOHELA), <br><br> Defendants. | Case No. **4:25-cv-08070-HSG** <br><br><br> PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681 et seq.) |

1. Plaintiff Saiko Oki ("Plaintiff"), appearing *pro se*, alleges this First Amended Complaint as follows:

**INTRODUCTION**

2. Plaintiff brings this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., against TransUnion LLC ("TransUnion"), Experian Information Solutions,

Inc. ("Experian"), and Equifax Information Services LLC ("Equifax") (collectively, the "CRA Defendants"); and MOHELA, Maximus Education, LLC d/b/a Aidvantage ("Aidvantage"); and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, the "Furnisher Defendants").

3. This action challenges the inaccurate and misleading reporting, reinvestigation, and furnishing of consumer credit information concerning Plaintiff.

4. Plaintiff alleges that the CRA Defendants included materially inaccurate and misleading information in her consumer reports, failed to maintain reasonable procedures to ensure maximum possible accuracy, and failed to conduct reasonable reinvestigations after receiving her disputes. Plaintiff further alleges that, after receiving notice of these disputes from one or more CRAs, the Furnisher Defendants failed to conduct reasonable investigations and did not correct, update, or delete the inaccurate information they continued to furnish.

5. The inaccuracies are not minor or technical. They include misstated balances, duplicate or inconsistent student loan tradelines, incorrect activity dates, and misleading account descriptors—errors that inflated Plaintiff's apparent debt load and misrepresented the age and status of accounts. These are material errors, relied upon by credit scoring models and underwriters assessing credit risk and eligibility.

6. Plaintiff submitted timely, detailed disputes with supporting documentation to the CRA Defendants. Despite having notice and access to accurate data, the CRA Defendants

verified or continued reporting the same inaccurate information. Likewise, the Furnisher Defendants failed to investigate or correct the disputed tradelines, allowing errors to persist across Plaintiff's credit files.

7. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered concrete and particularized harm, including emotional distress, confusion about her financial obligations, time and effort spent disputing errors, and diminished confidence in applying for credit or housing due to concerns about reliance on inaccurate reporting.

8. This First Amended Complaint addresses deficiencies previously identified by the Court and alleges specific facts showing how each Defendant violated distinct FCRA provisions. The described inaccuracies are material and would reasonably be expected to adversely affect credit decisions made by prospective lenders or other users of Plaintiff's consumer reports.

9. Defendant Redwood Credit Union has appeared and answered the original Complaint. In accordance with the Court's Order granting the other Defendants' motions to dismiss with leave to amend, this First Amended Complaint asserts amended claims only against those Defendants.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, as this action arises under the Fair Credit Reporting Act ("FCRA"), a federal statute. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Plaintiff

resides in the Northern District of California and a substantial part of the events or omissions giving rise to the claims occurred within this District.

**PARTIES**

**Plaintiff**

11. Plaintiff Saiko Oki is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c). Plaintiff resides in the Northern District of California and is the subject of the consumer reports at issue in this action.

**Consumer Reporting Agency Defendants**

12. Defendant TransUnion LLC ("TransUnion") is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). TransUnion regularly collects, assembles, evaluates, and furnishes consumer credit information for the purpose of furnishing consumer reports to third parties, including lenders and other users of consumer information, and did so with respect to Plaintiff.

13. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f). Experian regularly collects, assembles, evaluates, and furnishes consumer credit information to third parties and maintained consumer report data concerning Plaintiff during the relevant period.

14. Defendant Equifax Information Services LLC ("Equifax") is also a consumer reporting agency as defined by 15 U.S.C. § 1681a(f). Equifax routinely collects, assembles,

evaluates, and furnishes consumer credit information and maintained consumer report data concerning Plaintiff during the relevant period.

**Furnisher Defendants**

15. Defendant MOHELA is an entity that furnishes information regarding federal student loan accounts to consumer reporting agencies, including data about Plaintiff's credit accounts. MOHELA is a "furnisher of information" under 15 U.S.C. § 1681s-2(b) and is subject to the corresponding duties upon receiving notice of a consumer dispute from a consumer reporting agency.

16. Defendant Maximus Education, LLC d/b/a Aidvantage ("Aidvantage") is a federal student loan servicer that furnishes account information to consumer reporting agencies, including information about Plaintiff's accounts. Aidvantage is a furnisher of information subject to the duties imposed by 15 U.S.C. § 1681s-2(b) after receiving notice of a dispute from a consumer reporting agency.

17. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association that furnishes consumer credit information to consumer reporting agencies, including information regarding Plaintiff's credit card account. Wells Fargo is a furnisher of information under 15 U.S.C. § 1681s-2(b) and is obligated to fulfill its duties after receiving notice of a consumer dispute from a consumer reporting agency.

**GENERAL ALLEGATIONS**

18. Plaintiff Saiko Oki is a consumer whose creditworthiness has been evaluated and reported by nationwide consumer reporting agencies, including TransUnion, Experian, and Equifax, during the relevant period.

19. At all relevant times, TransUnion, Experian, and Equifax maintained consumer reports concerning Plaintiff that included information furnished by MOHELA, Aidvantage, and Wells Fargo Bank, N.A., among others.

20. Upon reviewing her credit reports, Plaintiff discovered multiple inaccuracies and inconsistencies, including but not limited to misstated balances, duplicate or overlapping student loan tradelines, incorrect dates of last activity or payment, and misleading account descriptors.

21. These inaccuracies appeared in material data fields commonly relied upon by automated credit-scoring systems and manual underwriters, including account balance, high credit, account status, and payment or activity dates.

22. After identifying these discrepancies, Plaintiff submitted written disputes to each of the consumer reporting agencies—TransUnion, Experian, and Equifax—pursuant to 15 U.S.C. § 1681i.

23. Plaintiff's disputes identified specific tradelines and account numbers or partial identifiers, explained why the reported information was inaccurate or misleading, and described how it failed to reflect Plaintiff's actual credit obligations or account status.

24. Plaintiff included supporting documentation with her disputes, including proof of identity, proof of address, and side-by-side comparisons of reports from multiple consumer reporting agencies showing conflicting data for the same accounts.

25. Each consumer reporting agency received and acknowledged Plaintiff's disputes and supporting documentation.

26. Upon receipt, the agencies initiated reinvestigations and, upon information and belief, provided notice of the disputes to the relevant furnishers, including MOHELA, Aidvantage, and Wells Fargo, pursuant to 15 U.S.C. § 1681i(a)(2).

27. Upon receiving such notice, MOHELA, Aidvantage, and Wells Fargo were required under 15 U.S.C. § 1681s-2(b) to conduct reasonable investigations and to correct, update, or delete any inaccurate or misleading information they had furnished.

28. Despite the detailed disputes and the availability of accurate data, the consumer reporting agencies verified or continued reporting the disputed information without correcting the inaccuracies or resolving the inconsistencies identified by Plaintiff.

29. Similarly, the Furnisher Defendants failed to conduct reasonable investigations and did not correct, update, or delete the inaccurate or misleading information, which remained in Plaintiff's consumer reports.

30. As a result, materially inaccurate and misleading account information continued to appear in Plaintiff's credit files.

31. Plaintiff expended significant time and effort reviewing her credit reports, preparing disputes, compiling documentation, and attempting to reconcile the inconsistent reporting across agencies and furnishers.

32. The persistence of these inaccuracies caused Plaintiff confusion about her actual credit obligations and impaired her ability to confidently assess her credit standing.

33. Defendants' continued reporting of inaccurate information caused Plaintiff to suffer emotional distress, anxiety, and frustration, compounded by the risk that third parties would rely on the erroneous data in credit, housing, or eligibility determinations.

34. Plaintiff's injuries are concrete, particularized, and traceable to Defendants' acts and omissions. These injuries persisted throughout the relevant period and remain ongoing.

**A. Plaintiff's Consumer Reports**

35. During the relevant period, Plaintiff obtained a three-bureau credit report from IdentityIQ that included data from TransUnion, Experian, and Equifax. Upon review, Plaintiff found

multiple tradelines and personal identifiers in her TransUnion file that were inaccurate, internally inconsistent, or materially misleading when compared to her actual account history and to parallel entries in the Experian and Equifax files.

36. Similar inconsistencies and inaccuracies were also present across the Experian and Equifax reports. These issues are described further in the individual Counts below.

**B. Redwood Credit Union Tradeline**

37. TransUnion reported a Redwood Credit Union installment account, Account No. ending in 400225, as active. It listed a High Credit of $10,547.00, a current balance of $10,371.00, and a monthly payment of $210.00, with a Date Last Active of April 30, 2025—suggesting that the account was open and in repayment.

38. However, a three-bureau comparison revealed material inconsistencies: while TransUnion and Experian both listed a High Credit of $10,547.00, Equifax reported a High Credit of $0.00 for the same account, despite also reporting a balance and monthly payment.

39. This discrepancy rendered the High Credit field materially misleading. Although all three agencies agreed the account was active, Equifax's report of a $0.00 High Credit conflicted with that status and with the balances reported.

**C. Wells Fargo Bank, N.A. Credit Card Tradeline**

40. TransUnion reported a Wells Fargo Bank, N.A. revolving credit card, Account No. ending in 060303, with a balance of $8,872.00, a credit limit of $17,000.00, and a High

Credit of $9,675.00. It listed a Date Last Active of May 15, 2025, and a Date of Last Payment as May 2, 2025.

41. Plaintiff discovered that other consumer reporting agencies showed earlier activity and payment dates for the same account and billing cycle. By reporting later activity and payment dates, TransUnion overstated the recency of Plaintiff's credit usage, which could mislead credit scoring models and underwriters evaluating her risk profile.

**D. Aidvantage (Department of Education) Student Loan Tradeline**

42. A single federal student loan serviced by Aidvantage, originally opened in 2018 with a balance of approximately $200,430.00 and a High Credit of $171,621.00, appeared in Plaintiff's credit reports from all three consumer reporting agencies: TransUnion, Experian, and Equifax.

43. Although the underlying loan account is the same, the three agencies reported key fields inconsistently. For example:

(a)Date Opened was listed as November 5, 2018, by TransUnion but November 1, 2018, by Experian and Equifax.

(b)Date Last Active was April 30, 2025, in TransUnion; April 1, 2025, in Experian and Equifax.

(c)Date of Last Payment also differed—March 6, 2025, in TransUnion, versus April 1, 2025, in Experian and Equifax.

(d)Comments varied: TransUnion used the phrase "Payment deferred," while Experian

added "Student loan – payment deferred," and Equifax combined it with "Fixed rate."

44. These discrepancies, though seemingly minor, created a misleading picture of the account's recency, status, and risk profile. Because lenders and credit scoring models rely heavily on consistent data across bureaus, such misalignment could materially affect Plaintiff's creditworthiness evaluations.

**E. MOHELA Student Loan Tradelines**

45. Throughout the three consumer reporting agencies, MOHELA-related tradelines were reported using slightly different partial account numbers and identifiers, making it difficult for Plaintiff to match each tradeline to a specific original loan.

46. Plaintiff originally received nine (9) federal student loans between 2014 and 2016, which were later consolidated into a single loan obligation serviced by Aidvantage. Despite this consolidation, the three nationwide consumer reporting agencies—TransUnion, Experian, and Equifax—continued to report MOHELA-related tradelines in a fragmented, duplicative, and inconsistent manner.

47. On May 25, 2025, Plaintiff reviewed a three-bureau credit report obtained through IdentityIQ, which displayed tradelines from TransUnion, Experian, and Equifax side-by-side. That report reflected approximately seventeen (17) MOHELA-related tradelines across the three agencies, with significant inconsistencies regarding which agency reported which tradelines, and with numerous missing, partial, or conflicting data

fields.

48. The excessive number of MOHELA-related tradelines, combined with the inconsistent and unclear presentation across TransUnion, Experian, and Equifax, materially misrepresented the number, structure, and status of Plaintiff's federal student loan obligations. This fragmentation impaired Plaintiff's ability to identify, verify, or dispute specific accounts and resulted in an inflated and misleading picture of her overall student loan profile.

**F. Outdated Personal Identifiers**

49. Across all three consumer reporting agencies, Plaintiff's credit reports included outdated or inaccurate personal identifiers, including former addresses and employment information. The reports listed obsolete residential addresses such as 1129 Mason Ct and 737 Post St, Apt. 713, both in San Francisco, California, and 115 Buena Vista Ave, Point Reyes Station, California—none of which were Plaintiff's current residence at the time of reporting.

50. In addition, Plaintiff's reports included outdated employer information, such as a prior affiliation with Western Athletic, Inc., which no longer reflected her employment status.

51. The inclusion of inaccurate address and employment data rendered Plaintiff's credit reports internally inconsistent and materially misleading. These identifiers play a critical role in identity verification and creditworthiness assessments. Their inaccuracy

heightened the risk of mistaken identity, interfered with accurate matching of tradelines, and could have adversely affected credit, housing, or employment-related decisions.

**G. Plaintiff's Disputes to Consumer Reporting Agencies**

52. On or about June 10, 2025, Plaintiff submitted written disputes to TransUnion, Experian, and Equifax, identifying the above-described inaccuracies. The disputes specified the affected tradelines and data fields, and included supporting documentation, such as proof of identity, proof of current address, and a side-by-side three-bureau comparison highlighting inconsistent or erroneous information.

53. Each consumer reporting agency received and acknowledged Plaintiff's disputes but failed to conduct a reasonable reinvestigation or correct the inaccuracies. Instead, they verified or continued reporting the same materially misleading and inaccurate data.

54. On or about July 18, 2025, Plaintiff submitted second written disputes to all three CRAs, reiterating the unresolved issues. Despite this renewed notice and the availability of accurate information, the agencies again failed to make any meaningful corrections and continued to report the same disputed tradelines and outdated personal identifiers.

**COUNT I – TransUnion LLC**

**(Violation of 15 U.S.C. § 1681e(b))**

55. Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

56. At all relevant times, Defendant TransUnion LLC ("TransUnion") was a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

57. Pursuant to 15 U.S.C. § 1681e(b), TransUnion had a statutory duty to follow reasonable procedures to assure maximum possible accuracy of the information it included in Plaintiff's consumer reports.

58. TransUnion furnished consumer reports about Plaintiff that contained materially inaccurate and misleading information, including but not limited to:

(a) duplicative and fragmented MOHELA student loan tradelines that overstated and mischaracterized Plaintiff's federal loan obligations;

(b) inconsistent and misleading balances, High Credit amounts, and account activity dates for student loans and credit card accounts; and

(c) outdated or incorrect personal identifiers, including obsolete addresses.

59. Specifically, TransUnion reported multiple MOHELA student loan tradelines identified by partial account numbers (e.g., E0082016092124, E0012014011424, E0062015111324), even though Plaintiff's official records from the U.S. Department of Education confirm she held only nine (9) original federal loans—all of which were later consolidated and are no longer active as individual obligations.

60. Plaintiff's IdentityIQ three-bureau credit report from May 24, 2025, reflected approximately seventeen (17) MOHELA-related tradelines across the three agencies. These tradelines did not align in a clear one-to-one relationship with the nine original loans and failed to reflect their consolidated status.

61. In TransUnion's report in particular, the MOHELA entries appeared duplicative, fragmented, and recently active. The inconsistent partial account numbers and data fields rendered it impossible to determine which tradeline corresponded to which underlying obligation.

62. As a result, TransUnion's reporting created a false impression that Plaintiff had a significantly higher number of open federal student loan accounts than she actually did. This materially distorted key credit metrics—such as debt-to-income ratio, total installment debt, and recency of activity—used by both automated scoring algorithms and manual underwriters.

63. Even if some of the data were technically accurate, the manner of presentation rendered the report materially misleading, in violation of the FCRA. The Ninth Circuit has held that technically accurate information may still violate § 1681e(b) if it misleads users of a consumer report. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018); *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

64. These errors were not isolated, but symptomatic of TransUnion's failure to implement reasonable procedures to:

(a) Identify and reconcile duplicate or inconsistent tradelines;

(b) Reflect loan consolidation;

(c) Accurately present the number and status of Plaintiff's student loans.

65. Accordingly, TransUnion failed to fulfill its duty under § 1681e(b), and is liable to Plaintiff for actual damages under 15 U.S.C. § 1681o, and for statutory and punitive damages where applicable, under 15 U.S.C. § 1681n.

**COUNT II – TransUnion LLC**

**(Violation of 15 U.S.C. § 1681i)**

66. Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

67. As a consumer reporting agency, TransUnion is subject to the reinvestigation obligations of 15 U.S.C. § 1681i.

68. On or about June 10, 2025, Plaintiff submitted a written dispute to TransUnion under § 1681i, identifying specific tradelines and data fields as inaccurate or misleading. Her dispute included:

(a) duplicative and inconsistent MOHELA student loan tradelines;

(b) inconsistent balances, High Credit values, and activity dates for student loans and

revolving accounts; and

(c) outdated personal identifiers, including obsolete addresses.

69. Plaintiff included supporting documentation with the dispute, such as proof of identity and address, along with a side-by-side comparison of credit reports from the three major CRAs showing conflicting entries for the same accounts.

70. Upon receipt, TransUnion was obligated to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to record the current status or delete the disputed data as required.

71. Despite the specificity and documentation provided, TransUnion failed to conduct a reasonable reinvestigation. In particular, TransUnion:

72. Did not meaningfully review or reconcile duplicative MOHELA entries in light of Plaintiff's loan consolidation;
(a) Failed to determine which tradelines matched Plaintiff's actual loan obligations;
(b) Failed to correct, delete, or clarify materially inconsistent data fields;
(c) Mechanically verified inaccurate data without addressing the substance of Plaintiff's disputes.

73. After completing its superficial reinvestigation, TransUnion continued to report the same inaccurate information.

74. Plaintiff submitted a second written dispute to TransUnion on or about July 18, 2025, again identifying the same issues and reiterating her concerns. Despite this, TransUnion again failed to conduct a reasonable reinvestigation and continued to publish materially inaccurate data in violation of § 1681i.

75. As a result, TransUnion is liable to Plaintiff for actual damages under 15 U.S.C. § 1681o, and for statutory and punitive damages where appropriate under 15 U.S.C. § 1681n.

**COUNT III – Equifax Information Services LLC**

**(Violations of 15 U.S.C. §§ 1681e(b) and 1681i)**

76. Plaintiff incorporates by reference all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

77. Defendant Equifax Information Services LLC ("Equifax") is a consumer reporting agency as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(f). At all relevant times, Equifax prepared, maintained, and disseminated consumer credit reports concerning Plaintiff for credit-related purposes.

78. Equifax reported multiple tradelines and personal identifiers inaccurately and inconsistently in Plaintiff's consumer report, including but not limited to the following examples:

**Redwood Credit Union – Account No. ending in 400225.**

79. Equifax reported this account as active with a balance and scheduled payment but listed a High Credit of $0.00. By contrast, TransUnion and Experian both reported a High Credit of $10,547.00 for the same account. This inconsistency materially misrepresented the account's characteristics, especially given its active status. Equifax also reported a "Date Last Active" of April 1, 2025, whereas TransUnion reported April 30, 2025, further contributing to conflicting recency data.

**Wells Fargo Bank, N.A. – Account No. ending in 060303.**

80. Equifax reported a "Date Last Active" of May 15, 2025, which conflicted with May 1, 2025, as reported by other bureaus. This discrepancy overstated the recency of Plaintiff's activity and could distort credit risk evaluations.

**DPT ED/AIDV (Aidvantage) – Account No. ending in 1E0012.**

81. Equifax's report conflicted with TransUnion and Experian regarding:

(a) "Date Last Active" (Equifax: April 1 vs. TransUnion: April 30, 2025),

(b) "Date of Last Payment" (Equifax: April 1 vs. Experian: March 6, 2025), and

(c) Account comments ("Student loan – payment deferred / Fixed rate" vs. "Payment deferred").

82. These conflicting data points distorted the loan's perceived activity and repayment status.

**MOHELA / U.S. Department of Education Tradelines.**

83. Equifax reported multiple student loan tradelines tied to MOHELA and the U.S. Department of Education, using a variety of partial account numbers (e.g., 61E0082016092124**, 61E0012014011424****, etc.). Plaintiff's official loan records confirm she held only nine (9) federal student loans — all of which were consolidated into a single obligation. Nevertheless, Equifax continued to report them as separate tradelines. In Plaintiff's IdentityIQ three-bureau report dated May 24, 2025, she observed approximately seventeen (17) MOHELA-related tradelines across all three CRAs.

84. Within the Equifax report, the use of duplicative, fragmented entries and non-matching identifiers (e.g., repeated use of 5753852865FD0** with differing balances) rendered the tradelines confusing and unverifiable. Equifax's reporting thus misrepresented Plaintiff's student loan obligations, inflating her total number of open installment accounts and balances, materially distorting her credit profile.

**Outdated Personal Identifiers**

85. In addition to tradeline inaccuracies, Equifax also reported obsolete personal identifiers, including former addresses such as 1129 Mason Ct and 737 Post St., Apt. 713, San Francisco, CA, despite Plaintiff's current address being P.O. Box 37, Point Reyes Station, CA 94956. The inclusion of outdated identifiers contributed to the overall inaccuracy and inconsistency of Plaintiff's consumer report, further demonstrating Equifax's failure to employ reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b).

**Plaintiff's Disputes and Equifax's Failure to Investigate.**

86. On June 10, 2025, Plaintiff mailed a written dispute to Equifax under 15 U.S.C. § 1681i. The dispute identified the inaccuracies described above and included supporting documentation: proof of identity, proof of address, and a side-by-side credit report highlighting tradeline inconsistencies. Equifax received the dispute via Certified Mail on June 15, 2025.

87. On July 18, 2025, Plaintiff sent a second reinvestigation request, referencing the continued inaccurate reporting. Despite the passage of the statutory reinvestigation period, Equifax failed to correct or delete the disputed information and did not conduct a reasonable reinvestigation.

**Violations and Liability**

**Violation of 15 U.S.C. § 1681e(b)**

88. Equifax violated its duty to maintain reasonable procedures to assure maximum possible accuracy by reporting:
(a) Duplicative and fragmented student loan tradelines;
(b) Inconsistent balances, High Credit figures, and activity dates; and
(c) Internally conflicting account data and outdated personal identifiers.

89. Even if some data points were technically correct, the manner of their presentation was materially misleading in a way likely to adversely affect credit decisions. See *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018); *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

**Violation of 15 U.S.C. § 1681i:**

90. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's written disputes. It failed to reconcile duplicative tradelines, address conflicting activity dates and balances, or resolve the inconsistencies identified in the supporting documentation. Equifax instead continued to report materially inaccurate information.

91. Accordingly, Equifax is liable to Plaintiff for actual damages pursuant to 15 U.S.C. § 1681o, and for statutory and punitive damages, where applicable, pursuant to 15 U.S.C. § 1681n.

**COUNT IV – Experian Information Solutions, Inc.**

**(Violations of 15 U.S.C. §§ 1681e(b) and 1681i)**

92. Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

93. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency ("CRA") within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(f). At all relevant times, Experian prepared, maintained, and disseminated consumer reports concerning Plaintiff for credit-related purposes.

94. Experian reported multiple tradelines and personal identifiers concerning Plaintiff inaccurately and inconsistently, including but not limited to:

**1. Redwood Credit Union – Account No. ending in 400225**

95. Experian reported conflicting "High Credit" amounts—$10,547 in some entries and $0 in others—alongside inconsistent "Date Last Active" and "Date of Last Payment" fields. Reporting a $0 High Credit while simultaneously reporting a balance and scheduled payment rendered the account data internally inconsistent and materially misleading.

**2. Wells Fargo Bank, N.A. – Account No. ending in 060303**

96. Experian reported a "Date Last Active" of May 15, 2025, conflicting with May 1, 2025, as reported by other CRAs. This misstatement exaggerated the recency of Plaintiff's account activity, a material factor in credit-scoring and underwriting.

**3. DPT ED/AIDV (Aidvantage) – Account No. ending in 110524**

97. Experian reported discrepancies in "Date Last Active," "Date of Last Payment," and account comments compared to Plaintiff's records and the reporting of other CRAs. These inconsistencies misrepresented the loan's repayment status and history, materially affecting Plaintiff's perceived creditworthiness.

**4. MOHELA / U.S. Department of Education**

98. Experian reported multiple MOHELA-related student loan tradelines using the same partial account number—5753852865FD0****—but with differing balances, including $25,836.00, $20,500.00, $10,250.00, $11,787.00, and $14,720.00. These entries appeared

in a report dated May 24, 2025.

99. Plaintiff held only nine (9) original federal student loans, as reflected in Department of Education records, all of which were consolidated. Experian's reporting of these loans as separate and currently active misrepresented Plaintiff's installment debt load and falsely inflated her number of open accounts.

100. The use of the same partial account number across multiple entries made it impossible to determine which tradeline corresponded to which loan. This fragmented reporting was ambiguous and misleading, impairing Plaintiff's ability to reconcile the data and presenting an inaccurate credit profile to third parties.

101. Such misreporting violates Experian's duty under 15 U.S.C. § 1681e(b) to maintain reasonable procedures to assure maximum possible accuracy. Courts in the Ninth Circuit have held that technically accurate but misleading data may violate the FCRA when it affects a consumer's credit standing. See *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018); *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

**Outdated Personal Identifiers and Employer Data**

102. Experian also reported obsolete addresses, including 115 Buena Vista Ave and other outdated locations, despite Plaintiff's current and only valid mailing address being P.O. Box 37, Point Reyes Station, CA 94956.

103. Experian further listed outdated or incorrect employer information, such as "Western Athletic Inc.," despite no current or verifiable association, increasing the risk of mixed-file errors and misidentification.

**Plaintiff's Disputes and Experian's Failure to Investigate**

104. On June 10, 2025, Plaintiff submitted a written dispute to Experian pursuant to 15 U.S.C. § 1681i. The dispute included specific tradeline errors and supporting documentation—proof of identity, proof of address, and a three-bureau credit report showing side-by-side discrepancies. Experian received this dispute via Certified Mail on June 14, 2025 (Tracking No. 9214 8901 4298 0420 0841 24), as confirmed by USPS Proof of Delivery.

105. On July 18, 2025, Plaintiff submitted a second written dispute, reiterating the unresolved inaccuracies. Despite receipt of both disputes, Experian failed to correct or delete the disputed data and continued to report inaccurate and misleading information.

**Violations and Liability**

**Violation of 15 U.S.C. § 1681e(b):**

106. Experian violated § 1681e(b) by preparing and furnishing consumer reports containing materially inaccurate and misleading data, including:

(a) Duplicative student loan tradelines;

(b) Internally inconsistent balances and activity dates;

(c) Misleading use of identical account numbers for different debts;

(d) Obsolete personal and employment identifiers.

107. These errors distorted Plaintiff's credit profile and were capable of adversely affecting credit decisions by third parties.

**Violation of 15 U.S.C. § 1681i:**

108. Experian failed to conduct a reasonable reinvestigation of Plaintiff's disputes. Its reinvestigation process relied on mechanical verifications and failed to resolve or clarify the reported inconsistencies, despite the availability of accurate data and supporting documentation.

109. Accordingly, Experian is liable to Plaintiff for actual damages under 15 U.S.C. § 1681o, and for statutory and punitive damages, where applicable, pursuant to 15 U.S.C. § 1681n.

**COUNT V – MOHELA**

**(Violation of 15 U.S.C. § 1681s-2(b))**

**A. Parties and Incorporation**

110. Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

111. Defendant MOHELA is a "furnisher of information" within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2, and furnished information

regarding Plaintiff's federal student loan accounts to one or more consumer reporting agencies, including TransUnion, Experian, and Equifax, during the relevant period.

**B. Inaccurate and Misleading Information Furnished by MOHELA**

112. MOHELA furnished materially inaccurate and misleading information regarding Plaintiff's federal student loan accounts, including but not limited to:

(a)Reporting more tradelines than the number of Plaintiff's actual underlying loans;

(b)Furnishing duplicative and overlapping tradelines following consolidation;

(c)Reporting inconsistent balances, high credit amounts, and activity dates;

(d)Failing to clearly associate reported tradelines with specific underlying Department of Education loans.

113. Plaintiff's loan history, as confirmed by official U.S. Department of Education disclosures, reflects nine (9) original federal student loans disbursed between 2014 and 2016. These loans were later consolidated into a single obligation and transferred for servicing. MOHELA's reporting did not accurately reflect this consolidation and instead presented Plaintiff's loan obligations as fragmented and inflated.

**C. Plaintiff's Disputes to Consumer Reporting Agencies**

114. On or about June 10, 2025, Plaintiff submitted written disputes to TransUnion, Experian, and Equifax identifying inaccuracies in MOHELA-related tradelines. These disputes included:

(a)Specific identification of MOHELA as the furnisher of the disputed data;

(b)Descriptions of duplicative tradelines, inconsistent balances, and misleading payment or activity dates;

(c)Supporting documentation, including proof of identity, proof of address, and side-by-side comparisons of reports from all three CRAs.

115. On or about July 18, 2025, Plaintiff submitted follow-up written disputes to the same CRAs, reiterating that the MOHELA tradelines remained inaccurate and unresolved.

## D. Notice to MOHELA via Consumer Reporting Agencies

116. Pursuant to 15 U.S.C. § 1681i(a)(2), the consumer reporting agencies were required to notify MOHELA of Plaintiff's disputes and to provide all relevant information regarding the nature of the disputes.

117. Plaintiff alleges, on information and belief, that one or more consumer reporting agencies did, in fact, provide such notice to MOHELA through standard automated dispute-processing systems (e.g., ACDV/e-Oscar) or other equivalent methods. This belief is supported by the following:

(a) Plaintiff submitted written disputes that specifically identified MOHELA as the furnisher of the disputed information;

(b) The disputes triggered the consumer reporting agencies' reinvestigation obligations under § 1681i;

(c) MOHELA continued furnishing data related to the disputed tradelines after the dispute period; and

(d) The MOHELA-related tradelines remained materially inaccurate and unchanged following the reinvestigation period.

118. The identity of the consumer reporting agency or agencies that provided notice, and the precise method of communication, are facts uniquely within Defendants' possession, custody, or control and will be confirmed through discovery.

**E. MOHELA's Failure to Conduct a Reasonable Investigation**

119. Upon receiving notice of Plaintiff's disputes from one or more CRAs, MOHELA was required under 15 U.S.C. § 1681s-2(b)(1) to:

(a) Conduct a reasonable investigation of the disputed information;

(b) Review all relevant information provided by the CRA;

(c) Report the results of its investigation to the CRA; and

(d) Correct, update, or delete any information determined to be inaccurate or misleading.

120. MOHELA failed to meet these statutory obligations. It did not correct, update, or delete the disputed information and continued furnishing materially inaccurate data to the CRAs. As a result, Plaintiff's consumer reports remained inaccurate following the statutory reinvestigation period.

**F. Damages**

121. As a direct and proximate result of MOHELA's violations of the FCRA, Plaintiff suffered actual damages, the full extent of which is set forth in the Damages section below.

**G. Statutory Liability**

122. MOHELA's conduct constitutes a negligent violation of the FCRA under 15 U.S.C. § 1681o.

123. To the extent MOHELA's conduct was willful or in reckless disregard of Plaintiff's rights, MOHELA is additionally liable for statutory and punitive damages pursuant to 15 U.S.C. § 1681n.

**COUNT VI – Aidvantage**

**(Violation of 15 U.S.C. § 1681s-2(b))**

**A. Parties and Incorporation**

124. Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

125. Defendant Aidvantage is a "furnisher of information" within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2, and, at all relevant times, furnished information concerning Plaintiff's federal student loan accounts to one or more consumer reporting agencies, including TransUnion, Experian, and Equifax.

**B. Inaccurate and Misleading Information Furnished by Aidvantage**

126. Aidvantage furnished materially inaccurate and misleading information concerning Plaintiff's student loan accounts, including but not limited to:

(a)Reporting inconsistent balances, high credit amounts, and account activity dates across different CRAs;

(b)Furnishing activity and payment dates that did not align with Plaintiff's actual federal loan history;

(c)Providing conflicting account comments and status descriptors that misrepresented Plaintiff's loan repayment and deferment status; and

(d)Failing to clearly reflect that Plaintiff's federal loans had been consolidated and serviced under a unified account.

127. Despite the consolidation of Plaintiff's loans, Aidvantage's reporting continued to mischaracterize the structure and recency of her obligations, resulting in a distorted portrayal of her credit profile and risk level.

**C. Plaintiff's Disputes to Consumer Reporting Agencies**

128. On or about June 10, 2025, Plaintiff submitted written disputes to TransUnion, Experian, and Equifax, specifically identifying inaccuracies in Aidvantage-related tradelines.

129. Her disputes:

(a)Identified Aidvantage as the furnisher of the disputed data;

(b)Described discrepancies in account balances, payment and activity dates, and misleading comments;

(c)Included supporting documentation such as proof of identity, address, and side-by-side

comparisons of her three-bureau reports.

130.    Plaintiff submitted a second round of written disputes on or about July 18, 2025, reiterating that the identified inaccuracies remained unresolved and requesting further reinvestigation.

**D. Notice to Aidvantage via Consumer Reporting Agencies**

131.    Pursuant to 15 U.S.C. § 1681i(a)(2), the consumer reporting agencies were required to provide notice of Plaintiff's disputes to Aidvantage, including all relevant information regarding the nature of the disputes.

132.    Plaintiff alleges, on information and belief, that one or more consumer reporting agencies provided such notice to Aidvantage through standard automated dispute-processing systems (e.g., ACDV/e-Oscar) or equivalent methods, because:

(a)Plaintiff submitted written disputes identifying Aidvantage as the furnisher of the disputed information;

(b)The disputes triggered the CRAs' statutory reinvestigation obligations under § 1681i;

(c)Aidvantage continued to furnish information concerning the disputed tradelines after the dispute period; and

(d)The disputed Aidvantage-related tradelines remained materially inaccurate and unchanged following the statutory reinvestigation period.

133. The identity of the consumer reporting agency or agencies that provided notice, and the precise method of communication, are facts uniquely within Defendants' possession, custody, or control and will be confirmed through discovery.

**E. Aidvantage's Failure to Conduct a Reasonable Investigation**

134. After receiving notice of Plaintiff's disputes, Aidvantage was obligated under 15 U.S.C. § 1681s-2(b)(1) to:

(a)Conduct a reasonable investigation;

(b)Review all relevant information provided by the CRAs;

(c)Report the results of its investigation to the CRAs; and

(d)Correct, update, or delete any inaccurate or misleading information.

135. Aidvantage failed to meet these duties. It continued to furnish inaccurate data and did not take corrective action despite having sufficient information and notice.

136. Aidvantage's investigation was unreasonable because it failed to:

(a)Reconcile reporting inconsistencies across bureaus;

(b)Accurately reflect Plaintiff's consolidation status;

(c)Meaningfully consider Plaintiff's supporting documentation and the discrepancies she identified.

**F. Damages**

137. As a direct and proximate result of Aidvantage's violations of the FCRA, Plaintiff suffered actual damages, the full extent of which is set forth in the Damages section below.

## G. Statutory Liability

138. Aidvantage's conduct constitutes a negligent violation of the FCRA under 15 U.S.C. § 1681o.

139. To the extent its conduct was willful or in reckless disregard of Plaintiff's rights, Aidvantage is liable for statutory and punitive damages pursuant to 15 U.S.C. § 1681n.

## COUNT VII – Wells Fargo Bank, N.A.

## (Violation of 15 U.S.C. § 1681s-2(b))

## A. Parties and Incorporation

140. Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as though fully set forth herein.

141. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a furnisher of information under the FCRA and, at all relevant times, provided data concerning Plaintiff's revolving credit card account to one or more consumer reporting agencies ("CRAs"), including TransUnion, Experian, and Equifax.

## B. Inaccurate and Misleading Information Furnished by Wells Fargo

142. Wells Fargo furnished materially inaccurate and misleading information related to Plaintiff's credit card account (Account No. ending in 060303), including:

(a)Inconsistent and conflicting "Date Last Active" information across CRAs for the same billing cycle;

(b)Activity dates that overstated the recency of Plaintiff's use of credit and payments, leading to a distorted credit activity profile;

(c)A failure to ensure that reported data accurately reflected Plaintiff's true payment timeline and account behavior.

143. These discrepancies gave an inaccurate picture of Plaintiff's credit utilization and repayment history—factors that materially affect credit risk assessments.

**C. Plaintiff's Disputes to Consumer Reporting Agencies**

144. On or about June 10, 2025, Plaintiff submitted written disputes to TransUnion, Experian, and Equifax identifying inaccuracies in the Wells Fargo tradelines. Her disputes:

(a)Cited Wells Fargo as the furnisher;

(b)Identified the specific account number;

(c)Explained why the reported dates and status fields were inaccurate and misleading.

145. On or about July 18, 2025, Plaintiff submitted second disputes, reiterating that the errors had not been resolved.

**D. Notice to Wells Fargo via Consumer Reporting Agencies**

146. Pursuant to 15 U.S.C. § 1681i(a)(2), the consumer reporting agencies were required to provide notice of Plaintiff's disputes to Wells Fargo, including all relevant information regarding the nature of the disputes.

147. Plaintiff alleges, on information and belief, that one or more consumer reporting agencies provided such notice to Wells Fargo through standard automated dispute-processing systems (e.g., ACDV/e-Oscar) or equivalent methods, because:

(a) Plaintiff submitted written disputes identifying Wells Fargo as the furnisher of the disputed information;

(b) The disputes triggered the CRAs' statutory reinvestigation obligations under § 1681i;

(c) Wells Fargo continued to furnish information concerning the disputed tradelines after the dispute period; and

(d) The disputed Wells Fargo-related tradelines remained materially inaccurate and unchanged following the statutory reinvestigation period.

148. The identity of the consumer reporting agency or agencies that provided notice, and the precise method of communication, are facts uniquely within Defendants' possession, custody, or control and will be confirmed through discovery.

**E. Wells Fargo's Failure to Conduct a Reasonable Investigation**

149. Upon receiving notice of Plaintiff's disputes, Wells Fargo had a duty under 15 U.S.C. § 1681s-2(b)(1) to:

(a)Conduct a reasonable investigation;

(b)Review all relevant information from the CRA;

(c)Report the results to the CRA; and

(d)Correct, update, or delete any inaccurate or misleading information.

150. Wells Fargo failed to meet these obligations. Its investigation was unreasonable because it:

(a)Did not reconcile the inconsistent "Date Last Active" fields;

(b)Failed to ensure that reported activity aligned with Plaintiff's actual credit use;

(c)Overlooked or ignored the documentation and concerns raised in Plaintiff's disputes.

**F. Damages**

151. As a direct and proximate result of Wells Fargo's violations of the FCRA, Plaintiff suffered actual damages, the full extent of which is set forth in the Damages section below.

**G. Statutory Liability**

152. Wells Fargo's conduct constitutes negligent violations of the FCRA under 15 U.S.C. § 1681o.

153. To the extent its actions were willful or in reckless disregard of Plaintiff's rights, Wells Fargo is liable for statutory and punitive damages under 15 U.S.C. § 1681n.

**DAMAGES**

154. As a direct and proximate result of Defendants' violations of the Fair Credit Reporting Act, Plaintiff suffered concrete and particularized injuries that were actual, ongoing, and foreseeable.

155. Defendants' inaccurate and misleading credit reporting materially distorted Plaintiff's apparent debt burden, account recency, and credit profile—factors relied upon by automated credit-scoring systems and manual underwriters.

156. As a result of Defendants' conduct, Plaintiff experienced impairment of creditworthiness, including a diminished sense of confidence in pursuing credit, housing, or other financial opportunities, due to the ongoing risk that third parties would rely on the inaccurate reporting.

157. Plaintiff expended significant time and effort reviewing her credit reports, preparing and submitting disputes, gathering supporting documentation, tracking certified mail deliveries, and attempting to reconcile inconsistent or duplicative reporting across multiple consumer reporting agencies and furnishers.

158. In addition, Plaintiff suffered emotional distress—including anxiety, frustration, and mental anguish—caused by the persistence of inaccurate and misleading information, uncertainty about her true financial obligations, and concern that such inaccuracies could adversely affect major life decisions.

159.    Plaintiff's injuries are not hypothetical or speculative; they were the direct and foreseeable result of Defendants' failure to follow reasonable procedures and conduct adequate reinvestigations upon notice of Plaintiff's disputes. Defendants' violations also exposed Plaintiff to an ongoing risk that inaccurate information would continue to be disseminated to third parties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

**A. Actual Damages**

For actual damages sustained by Plaintiff as a result of Defendants' negligent violations of the Fair Credit Reporting Act, pursuant to 15 U.S.C. § 1681o, including but not limited to emotional distress, loss of time and effort, and impairment of creditworthiness.

**B. Statutory and Punitive Damages**

For statutory damages and, where applicable, punitive damages for Defendants' willful violations of the Fair Credit Reporting Act, pursuant to 15 U.S.C. § 1681n.

**C. Declaratory and Appropriate Equitable Relief**

For a declaration that Defendants' acts and omissions, as alleged herein, violated Plaintiff's rights under the Fair Credit Reporting Act, and for such further equitable relief as the Court deems appropriate and consistent with its authority under the FCRA.

**D. Costs and Attorneys' Fees**

For costs of suit and reasonable attorneys' fees as authorized by 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

**E. Pre- and Post-Judgment Interest**

For pre-judgment and post-judgment interest as permitted by law.

**F. Such Other and Further Relief**

For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: 12/31/25
*/s/Saiko Oki*
Saiko Oki
Plaintiff, Pro Se
P.O. Box 37
Point Reyes Station, CA 94956
Phone:415-328-9684
Email: saikookilac@gmail.com

**VERIFICATION**

I, Saiko Oki, am the Plaintiff in this action and am representing myself pro se. I have read the foregoing First Amended Complaint and know the contents thereof. The factual allegations therein are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 31, 2025 at Point Reyes Station, California.

*/s/Saiko Oki*
Saiko Oki
Plaintiff, Pro Se